Docket No. 95643–Agenda 11–November 2003.

MARK LYON, Appellee, v. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES 
et al.
, Appellants.

Opinion filed March 18, 2004.

JUSTICE GARMAN delivered the opinion of the court:

Defendant Department of Children and Family Services (the Department) indicated a report of abuse against plaintiff, Mark Lyon, which was entered into the Department’s State Central Register pursuant to the Abused and Neglected Child Reporting Act (the Act) (325 ILCS 5/1 
et seq.
 (West 1998)). Lyon sought reversal of the indicated report and expungement of the report from the central register through the administrative appellate process established by the Act, arguing that procedural violations by the Department violated his due process rights and that the indicated finding was against the manifest weight of the evidence.

When his administrative appeal was denied in part, Lyon sought judicial review pursuant to the Administrative Review Law (735 ILCS 5/3–101 (West 2002)) as permitted by the Act. 325 ILCS 5/7.16 (West 1998). The circuit court set aside the remaining indicated findings because Lyon’s due process rights were violated by discovery deficiencies. The appellate court affirmed the circuit court judgment, but the appellate court instead found a due process violation in the combination of the standard of proof used during early stages of the administrative process and the delays in processing the appeal. 335 Ill. App. 3d 376, 390. We granted the Department’s petition for leave to appeal (177 Ill. 2d R. 315) and allowed the filing of an 
amicus
 brief by the Chicago Teachers Union, Local 1, American Federation of Teachers, AFL-CIO, in support of Lyon (155 Ill. 2d R. 345(a)). For the following reasons, we affirm the appellate court.

BACKGROUND

The State Central Register records all cases of suspected child abuse or neglect processed by the Department under the Act. 325 ILCS 5/7.7 (West 1998). The Department investigates all reports and finds them to be “indicated,” “unfounded,” or “undetermined.” 325 ILCS 5/7.12 (West 1998). An “indicated report” is a report of abuse or neglect that investigation reveals is supported by credible evidence. 325 ILCS 5/3 (West 1998); 89 Ill. Adm. Code §300.20 (2002). “Credible evidence” means that “the available facts, when viewed in light of the surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected.” 89 Ill. Adm. Code §300.20 (2002).

The Department appeals the appellate court’s holding that when the Department uses the credible-evidence standard to support an indicated finding, then it must strictly comply with applicable statutory and regulatory deadlines in adjudicating the subject’s administrative appeal to provide the subject due process. Lyon answers by alleging that several actions by the Department violated his due process rights, including: (1) the use of the credible-evidence standard of proof to support the indicated finding and the denial of his first-stage appeal; (2) the failure to provide timely disclosure of the investigative file and the failure to turn over the complete file; and (3) the violation of statutory and regulatory deadlines concerning the investigation, the indicated finding, the hearing, and the issuance of the Director’s decision. Lyon also argues that the indicated findings were against the manifest weight of the evidence. We affirm the appellate court’s judgment affirming the expungement of the indicated findings because Lyon’s due process rights were violated by the standard of proof used and the delays in the administrative appeal, so we do not reach the additional constitutional issues raised by Lyon. See 
People ex rel. Waller v. 1990 Ford Bronco
, 158 Ill. 2d 460, 464 (1994). We summarize the facts that are relevant to our analysis.

Lyon was employed as a choral director at Gibson City-Melvin High School. On February 9, 2000, the Department received a report that Lyon had abused two students, H.B. and J.N. On April 11, the Department completed its investigation and determined that the report of abuse was indicated. On April 17, the indicated report was recorded on the official investigation form; following supervisor approval and transmission to Springfield, it was entered into the central register shortly thereafter. Specifically, the Department found three claims to be indicated: sexual exploitation of H.B., sexual molestation of H.B., and substantial risk of physical injury (sexual) of J.N.

On July 19, 2000, the Department sent to Lyon official notice that it had entered the indicated report in the central register and explained his appellate rights. Lyon appealed the indicated report and requested expungement of the report from the central register on August 29. On September 13, the Department denied Lyon’s expungement request, concluding that the indicated finding was supported by credible evidence. Two days later, Lyon requested the second stage of administrative appeal, a hearing before an administrative law judge.

The hearing began on November 1, 2000. The hearing was not completed on that day, so the hearing was scheduled to proceed on November 13. However, the parties agreed to a continuance until December 19, because of a scheduling conflict. The hearing again was continued because the administrative law judge was in an automobile accident on the way to the hearing. The hearing concluded as scheduled by the second continuance, on January 24, 2001.

The administrative law judge issued her recommendation and opinion on February 9, 2001. After making several findings of fact, she found that the Department had not met its burden of showing that the indicated finding of substantial risk of physical injury (sexual) of J.N. was supported by a preponderance of the evidence, so she ordered that indicated finding be expunged from the central register. However, the judge affirmed the indicated finding of sexual exploitation and sexual molestation of H.B. under the preponderance standard. On March 23, the Director of the Department issued his decision adopting the conclusions of the administrative law judge, which constituted the final administrative decision.

Lyon filed a complaint for administrative review in the Champaign County circuit court on April 9, 2001. Lyon alleged that several actions by the Department violated his due process rights and that the findings of the administrative law judge were against the manifest weight of the evidence. Following briefing and argument, the circuit court set aside the decision of the Department because “[t]he Department’s refusal to provide full and complete discovery to the Plaintiff in a timely manner violated his due process rights.”

A divided appellate court affirmed the circuit court judgment, but on different grounds. The appellate court noted that Lyon did not allege that the Department failed to produce any documents. The court concluded that there was no due process violation in the lateness of the Department’s transmission of the investigative file because Lyon did not show that it prejudiced him. Similarly, Lyon did not show he suffered any prejudice because the Department delayed the sending of the indicated report to the central register. In addition, the investigation was completed within statutory and regulatory deadlines. However, the Department did violate deadlines regarding the issuance of the final decision. 335 Ill. App. 3d at 385-87.

The appellate court next evaluated the credible-evidence standard of proof that the Department used in finding the report indicated. The court discussed cases from different jurisdictions. After noting that being entered into the State Central Register implicates a liberty interest, the court applied the test from 
Mathews v. Eldridge
, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (1976), to determine whether this low standard of proof was adequate. 335 Ill. App. 3d at 389, citing 
Cavarretta v. Department of Children & Family Services
, 277 Ill. App. 3d 16, 28 (1996). In light of the 
Mathews
 factors, the court explained, “The credible-evidence standard is fair only if the alleged perpetrator soon receives a hearing under the preponderance-of-the-evidence standard and, soon after the hearing, the Department issues a final decision.” 335 Ill. App. 3d at 390. Thus, the court held that Lyon’s due process rights were violated by the combination of the Department’s use of the credible-evidence standard of proof with its failure to strictly comply with its statutory and regulatory deadlines in processing the administrative appeal. The court signaled that strict statutory and regulatory compliance is not required when the Department uses the more stringent preponderance- of-the-evidence standard of proof. 335 Ill. App. 3d at 390.

The dissenting opinion noted that the discovery was timely provided, and the entire appeals process was completed in approximately eight months. The delays that occurred were reasonable because they were much shorter than those found unconstitutional in 
Stull v. Department of Children & Family Services
, 239 Ill. App. 3d 325, 334-35 (1992), and 
Cavarretta
, 277 Ill. App. 3d at 26-27, and were also shorter than those found acceptable in 
S.W. v. Department of Children & Family Services
, 276 Ill. App. 3d 672, 680-81 (1995). 335 Ill. App. 3d at 390-91 (Myerscough, J., dissenting).

ANALYSIS

The Administrative Review Law provides for judicial review of all questions of fact and law presented by the entire record. 
DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund of Cook County
, 156 Ill. 2d 377, 380 (1993), citing Ill. Rev. Stat. 1983, ch. 110, par. 3–101, now codified at 735 ILCS 5/3–101 (West 2002). Courts cannot consider evidence outside of the record of the administrative appeal. 735 ILCS 5/3–110 (West 2002). An administrative agency’s findings of fact are not reversed unless they are against the manifest weight of the evidence, and questions of law are reviewed 
de novo
. 
DiFoggio
, 156 Ill. 2d at 380-81. We review the issue of whether Lyon’s procedural due process rights were violated under the 
de novo
 standard because it is a legal question. 
People v. Hall
, 198 Ill. 2d 173, 177 (2001).

We will not reach constitutional questions if a case can be resolved on other grounds (
Waller
, 158 Ill. 2d at 464), so we first address Lyon’s assertion that the indicated findings are against the manifest weight of the evidence. A finding is against the manifest weight of the evidence if “the opposite conclusion is clearly evident” or where it is “unreasonable, arbitrary, and not based upon any of the evidence.” 
Snelson v. Kamm
, 204 Ill. 2d 1, 35 (2003). We have reviewed the record in this case, and we conclude that the indicated finding is not reversible under this standard.

The due process clause protects fundamental justice and fairness. 
People v. Lindsey
, 199 Ill. 2d 460, 472 (2002). However, what due process entails is a flexible concept in that “not all situations calling for procedural safeguards call for the same kind of procedure.” 
Morrissey v. Brewer
, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600 (1972); see also 
Lindsey
, 199 Ill. 2d at 472. Consequently, what procedures are required by due process in a particular situation depend upon “ ‘the precise nature of the government function involved as well as the private interest that has been affected by governmental action.’ ” 
Morrissey
, 408 U.S. at 481, 33 L. Ed. 2d at 494, 92 S. Ct. at 2600, quoting 
Cafeteria & Restaurant Workers Union, Local 473 v. McElroy
, 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 1236, 81 S. Ct. 1743, 1748-49 (1961); see also 
Lindsey
, 199 Ill. 2d at 472. Due process principles apply to administrative proceedings. 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 92 (1992).

Procedural due process claims question the constitutionality of the procedures used to deny a person’s life, liberty, or property. 
Segers v. Industrial Comm’n
, 191 Ill. 2d 421 (2000). We have explained: “It is a well-established constitutional principle that every citizen has the right to pursue a trade, occupation, business or profession. This inalienable right constitutes both a property and liberty interest entitled to the protection of the law as guaranteed by the due process clauses of the Illinois and Federal constitutions.” 
Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton
, 105 Ill. 2d 389, 397 (1985); see also 
Meyer v. Nebraska
, 262 U.S. 390, 399, 67 L. Ed. 1042, 1045, 43 S. Ct. 625, 626 (1923). Generally, the State must act reasonably before depriving a person of an interest protected by the due process clause. 
Rosewell v. Chicago Title & Trust Co.
, 99 Ill. 2d 407, 412 (1984).

We must first determine whether listing an indicated report about Lyon on the Department’s central register affected an interest protected by due process. Damage to one’s reputation alone is insufficient to claim deprivation of a due process liberty interest, but stigma plus the loss of present or future employment is sufficient. 
Cavarretta
, 277 Ill. App. 3d at 21, citing 
Paul v. Davis
, 424 U.S. 693, 702-10, 47 L. Ed. 2d 405, 414-19, 96 S. Ct. 1155, 1161-65 (1976). To teach in Illinois public schools, a person must have a teaching certificate. 105 ILCS 5/21–1 (West 2002). A teacher’s certificate can be suspended or revoked when, after a separate hearing subject to appellate review, an indicated report is found supported by clear and convincing evidence. 105 ILCS 5/21–23(b) (West 2002). The Department must find credible evidence to indicate a report of abuse or neglect on the central register, which is a lower standard of proof than the clear and convincing evidence needed to justify suspension or revocation of a teaching certificate. See 
Bazydlo v. Volant
, 164 Ill. 2d 207, 213 (1995) (clear and convincing evidence is more than a preponderance). However, there is still a substantial risk that a person indicated on the central register will lose the ability to teach in the public schools in Illinois.

In addition, a school employee with an indicated finding may be terminated and may have difficulty finding other employment in the teaching profession solely because of the indicated finding. The Act authorizes school superintendents to access the central register to do background investigations. 325 ILCS 5/11.1(11) (West 2002). In the present case, the record does not reveal whether Lyon’s teaching certificate was affected by this situation, but Lyon did in fact lose two teaching jobs, including his job at Gibson City-Melvin High School, following the entry of the indicated report into the central register. Thus, because of the substantial risk that a teacher will be barred from pursuing his or her chosen occupation, as occurred in the present case, we find that an indicated report in the central register implicates a protected due process interest. 
Cavarretta
, 277 Ill. App. 3d at 22; 
Stull
, 239 Ill. App. 3d at 335; 
Doyle v. Camelot Care Centers
, 305 F.3d 603, 617 (7th Cir. 2002) (discussing Illinois law); 
Dupuy v. McDonald
, 141 F. Supp. 2d 1090, 1134 (N.D. Ill. 2001) (discussing Illinois law); see also 
In re Lee TT
, 87 N.Y.2d 699, 709, 664 N.E.2d 1243, 1250, 642 N.Y.S.2d 181, 188 (1996).

Next, we must determine whether the procedures provided to Lyon met the requirements of due process. The United States Supreme Court has made clear that due process is a matter of federal constitutional law, so compliance or noncompliance with state procedural requirements is not determinative of whether minimum procedural due process standards have been met. 
Cleveland Board of Education v. Loudermill
, 470 U.S. 532, 541, 84 L. Ed. 2d 494, 503, 105 S. Ct. 1487, 1492 (1985). Violation of state requirements may not indicate a due process violation, and vice versa, but these requirements are a useful reference because they represent standards that the General Assembly and the Department concluded were sufficient.

Lyon asserts that the Department missed several of its own statutory and regulatory deadlines concerning the hearing and the issuance of the Director’s decision on appeal. A subject can request an appeal of the Department’s indicated finding, and if the Department fails to act or denies the request within 10 days then the subject can request an administrative hearing. 325 ILCS 5/7.16 (West 1998); 89 Ill. Adm. Code §336.40(c) (2002). Lyon appealed the indicated report on August 29, 2000, which the Department denied on September 13. Two days later, Lyon requested a hearing before an administrative law judge. The hearing shall be held “within a reasonable time” of the subject’s request. 325 ILCS 5/7.16 (West 1998). The hearing began on November 1, which is 47 days after it was requested.

Although provisions do not otherwise specify when the hearing should be scheduled, we can infer that the events of this case correspond to regulatory expectations. As discussed in greater detail below, relevant provisions specify that the final decision must be released within 45 days of the end of the hearing (325 ILCS 5/7.16 (West 1998)) and within 90 days of the request for the hearing (89 Ill. Adm. Code §336.220(a) (2002)). Read together, these provisions envision two considerations: that the hearing should be conducted within approximately 45 days of the request for the hearing; and that some flexibility is appropriate so that some delays in the hearing can be cured by the prompt release of the final decision and a prompt hearing can compensate for some delays in the release of the final decision. Thus, considered in isolation, scheduling the hearing to begin 47 days after it was requested complies with the statutory requirement that the hearing be held “within a reasonable time.” 325 ILCS 5/7.16 (West 1998). However, we note that the timing of the scheduling of the hearing may implicate due process rights when combined with delay in the release of the decision. See 
Federal Deposit Insurance Corp. v. Mallen
, 486 U.S. 230, 241-42, 100 L. Ed. 2d 265, 279, 108 S. Ct. 1780, 1788 (1988).

The administrative law judge shall issue her recommendation to the Director within 90 days of the request for the hearing, and the Director must issue his final decision accepting or rejecting the administrative law judge’s recommendation within the same 90-day period. 89 Ill. Adm. Code §336.220(a) (2002). Lyon requested a hearing on September 15, 2000. The administrative law judge issued her decision on February 9, 2001, or 147 days later. The Director issued his final decision on March 23, 2001, which is 189 days after the hearing request. However, some delays are excusable or attributable to Lyon, and these days shall not be counted. 89 Ill. Adm. Code §§336.150(c), 336.220(a) (2002). When the hearing was not completed during its first day on November 1, the hearing was continued until November 13. The parties agreed to delay the second day of the hearing until December 19 because of a scheduling conflict, so the period from November 13 to December 19, 36 days, should not be counted. In addition, the second day again was continued until January 24, 2001, because the administrative law judge was in an automobile accident on the way to the hearing. Because a full day of the hearing already had been held, the option of avoiding further delay through reassignment to a different judge was less tenable given the relative promptness with which the second day could be rescheduled. In addition, Lyon did not object to this continuance. Thus, we decline to penalize the Department for this 36-day delay; the car accident constituted good cause for a continuance. 89 Ill. Adm. Code §§336.150(a), (c) (2002). Thus, the time periods of the release of decisions from the request for the hearing should each be reduced by 72 days. With this adjustment, the administrative law judge released her decision 75 days after the hearing began, and Director of the Department issued his decision 117 days after the hearing request. According to regulatory deadlines, only the Director missed the 90-day deadline, by 27 days.

The Director also must issue his final decision within 45 days of the end of the hearing. 325 ILCS 5/7.16 (West 1998). The hearing ended January 24, 2001, and the Director released the decision on March 23, which was 58 days after the hearing concluded and 13 days past the statutory deadline. Due process concerns may be raised by the length of time the subject waits for the issuance of the final agency decision concerning his appeal. See 
Mallen
, 486 U.S. at 241-42, 100 L. Ed. 2d at 279, 108 S. Ct. at 1788.

The due process clause requires that the opportunity to be heard occur “ ‘at a meaningful time and in a meaningful manner.’ ” 
Mathews
, 424 U.S. at 333, 47 L. Ed. 2d at 32, 96 S. Ct. at 902, quoting 
Armstrong v. Manzo
, 380 U.S. 545, 552, 14 L. Ed. 2d 62, 66, 85 S. Ct. 1187, 1191 (1965). The United States Supreme Court has explained the factors courts should consider when evaluating procedural due process claims:

“First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” 
Mathews
, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903.

The Supreme Court has adapted the general 
Mathews
 factors for the more specific determination of whether a delay in the provision of procedure offended due process: the importance of the private interest and the harm to the interest because of the delay; the government’s justification for the delay and its connection to the underlying government interest; and the likelihood that the interim decision may have been mistaken. 
Mallen
, 486 U.S. at 242, 100 L. Ed. 2d at 279, 108 S. Ct. at 1788 (examining the constitutionality of the delay in the provision of a postsuspension hearing for a federal official suspended from his job at a federally insured bank following his indictment).

We recognize that Lyon has a significant interest in not having an indicated report about him entered into the central register because, as discussed above, an indicated report essentially bars employment in his chosen profession of teaching. 
Cavarretta
, 277 Ill. App. 3d at 28; 
Doyle
, 305 F.3d at 618 (applying Illinois law); 
Dupuy
, 141 F. Supp. 2d at 1135 (applying Illinois law). As permitted by the Act, an indicated report was entered into the central register before Lyon appealed the indicated finding. See 325 ILCS 5/7.16 (West 1998). Lyon and other subjects have a significant interest in obtaining a hearing and a final decision in a prompt and efficient manner so that indicated reports, if mistaken, are expunged as quickly as possible to minimize their damaging impact.

The state has a similarly significant interest in protecting the welfare of children, and the central register is one mechanism the state uses to protect children from abuse and neglect. 
Cavarretta
, 277 Ill. App. 3d at 28; 
Dupuy
, 141 F. Supp. 2d at 1135 (applying Illinois law); 
Lee TT
, 87 N.Y.2d at 710, 664 N.E.2d at 1251, 642 N.Y.S.2d at 189. The Department justifies delays in the appellate process in this case by asserting that the time periods were reasonable and that this court should not require the Department to strictly comply with its own regulations.

The Department is correct that providing due process is not automatically synonymous with compliance with state regulations. 
Loudermill
, 470 U.S. at 541, 84 L. Ed. 2d at 503, 105 S. Ct. at 1492. Instead, the state must act reasonably when depriving a person of a protected interest to avoid infringing on the person’s due process rights. 
Rosewell
, 99 Ill. 2d at 412. Several Illinois cases have evaluated the reasonableness of delays in the administrative appeals process provided under the Act. See, 
e.g.
, 
Lehmann v. Department of Children & Family Services
, 342 Ill. App. 3d 1069, 1080 (2003); 
S.W.
, 276 Ill. App. 3d at 680-81; 
Stull
, 239 Ill. App. 3d at 330-31. However, we agree with the appellate court that this issue cannot be resolved merely by comparing the lengths of delays because the courts in these cases failed to consider the related issue of the standard of proof when resolving the due process claims. 335 Ill. App. 3d at 387.

The standard of proof applied has a direct influence on the risk of erroneous judgments. When a higher standard of proof is applied, there is a reduced risk of finding an innocent person guilty and an increased risk of acquitting a guilty person. 
In re Winship
, 397 U.S. 358, 370-71, 25 L. Ed. 2d 368, 379, 90 S. Ct. 1068, 1076 (1970) (Harlan, J., concurring). The applicable standard of proof in a particular proceeding, therefore, should be chosen based on a consideration of what balance of the risk of these two types of errors is appropriate under the circumstances. 
Winship
, 397 U.S. at 371, 25 L. Ed. 2d at 379, 90 S. Ct. at 1076 (Harlan, J., concurring). We conclude that the interests of indicated subjects and the state, on behalf of children, are both significant. However, we find it is appropriate to place more of the risk of error on adults, who may suffer mistaken employment hardship, than on children, who may suffer additional abuse. Thus, we must evaluate whether the use of the credible evidence standard to support the indicated finding and the decision in the first stage of appeal distributes the risk of error properly given the delays in the provision of Lyon’s administrative appeal.

“Credible evidence” means that “the available facts, when viewed in light of the surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected.” 89 Ill. Adm. Code §300.20 (2002). At the hearing on appeal, the Department has the burden of proving that the indicated finding is supported by a preponderance of the evidence. 89 Ill. Adm. Code §336.100(e) (2002); see 325 ILCS 5/7.16 (West 1998). “Preponderance of the evidence” is defined as “the greater weight of the evidence or evidence which renders a fact more likely than not.” 89 Ill. Adm. Code §336.20 (2002).

In Lyon’s case, the indicated finding was determined to be supported by credible evidence at the completion of the investigation and upon denial of Lyon’s first-stage appeal, which is the standard required by regulation. 89 Ill. Adm. Code §300.110(i)(2) (2002). The decision from the second-stage appeal, the administrative hearing, was evaluated under the preponderance-of-the-evidence standard, also in compliance with the rules. 89 Ill. Adm. Code §336.100(e) (2002). Despite regulatory compliance, however, we recognize that the use of the credible-evidence standard of proof in early stages of the administrative appeals process may raise due process concerns. See 
Cavarretta
, 277 Ill. App. 3d at 28-29, 
Doyle
, 305 F.3d at 617-19 (discussing Illinois law); 
Dupuy
, 141 F. Supp. 2d at 1135-36 (discussing Illinois law); 
Lee TT
, 87 N.Y.2d at 711-12, 664 N.E.2d at 1252, 642 N.Y.S.2d at 190.

The New York Court of Appeals, the state’s highest court, explained the dangers of using the minimal credible-evidence standard in a case analogous to the present case:

“Abuse frequently involves private conduct and is based upon the reports of minors or actions of a minor observed and interpreted by others. There may be no supporting eyewitness testimony or objective evidence to support the report and therefore the evaluation of it may involve, to a large degree, subjective determinations of credibility. Under the present standard a fact finder in such cases may be tempted to rely on an intuitive determination, ignoring any contrary evidence. The risk of error is placed entirely on the subject of the report for there is no requirement that the fact finder must consider, let alone evaluate, evidence favorable to the subject.

Not surprisingly this process results in a disturbingly high number of false positive findings of abuse.” 
Lee TT
, 87 N.Y.2d at 711-12, 664 N.E.2d at 1251-52, 642 N.Y.S.2d at 189-90.

As in New York, the credible-evidence standard in Illinois does not require the fact finder to consider contrary evidence. 
Cavarretta
, 277 Ill. App. 3d at 28. As a result, we agree with the New York Court of Appeals that the credible-evidence standard places the risk of error entirely on the subject. This risk of error is not insignificant; New York and Illinois both have a strikingly high rate of reversal of challenged indicated findings based on credible evidence. 
Dupuy
, 141 F. Supp. 2d 1090, 1135 (applying Illinois law) (noting a 74.6% reversal rate of appealed indicated findings in Illinois); 
Valmonte v. Bane
, 18 F.3d 992, 1004 (2d Cir. 1994) (applying New York law) (noting that nearly 75% of indicated findings are expunged on appeal in New York).

In contrast, the risk of error under the preponderance-of-the- evidence standard is distributed much more evenly. “Because proof by a preponderance of the evidence requires that ‘[t]he litigants ... share the risk of error in a roughly equal fashion,’ [citation], it rationally should be applied only when the interests at stake are of roughly equal societal importance.” 
Santosky v. Kramer
, 455 U.S. 745, 787, 71 L. Ed. 2d 599, 628, 102 S. Ct. 1388, 1412 (1982) (Rehnquist, J., dissenting, joined by Burger, C.J., White and O’Connor, JJ.). The final administrative decision, the Director’s decision following a hearing, is conducted under this higher standard with the Department bearing the burden of proof. 89 Ill. Adm. Code §336.100(3) (2002).

We again apply the 
Mathews
 test to evaluate the standard of proof. We recognize that Lyon has a significant interest in not having an indicated report against him in the central register because of its negative impact on his chosen career. 
Cavarretta
, 277 Ill. App. 3d at 28; 
Doyle
, 305 F.3d at 618 (applying Illinois law); 
Dupuy
, 141 F. Supp. 2d at 1135 (applying Illinois law). Clearly, this interest is advanced by application of a higher standard of proof that leads to fewer errors in indicated findings. The state also has a significant interest in protecting the welfare of children in part through the administration of the central register. 
Cavarretta
, 277 Ill. App. 3d at 28; 
Dupuy
, 141 F. Supp. 2d at 1135 (applying Illinois law); 
Lee TT
, 87 N.Y.2d at 710, 664 N.E.2d at 1251, 642 N.Y.S.2d at 189. The state’s interest is promoted by application of a lower standard of proof that allows the state to intervene quickly, possibly preventing additional abuse, although the state also has a contrary interest in avoiding mistakes. 
Lee TT
, 87 N.Y.2d at 710, 664 N.E.2d at 1251, 642 N.Y.S.2d at 189. In weighing these opposing interests, we again recognize that they are similarly important but that we will place more of the risk of error on the subjects rather than the children.

In light of these considerations, we conclude that the use of the credible-evidence standard to indicate a report and to consider a first-stage appeal does not automatically deprive a subject of due process because the second-stage appeal is conducted under the more stringent preponderance standard. See, 
e.g.
, 
In re Selivonik
, 164 Vt. 383, 389, 670 A.2d 831, 835 (1995). By using a weaker standard of proof, the state is equipped to respond more quickly to allegations of abuse and neglect. We find that it is constitutionally acceptable to place the entire risk of error, through use of the credible-evidence standard, on the subject for the finite period of the administrative appeal because the appeal is finally determined under the preponderance standard, which balances the risk of error equally.

Nevertheless, this distribution of the risk of error becomes problematic when the subject is not accorded a prompt appeal. We conclude that it is constitutionally inappropriate to allow indicated reports based on credible evidence, with their damaging effects on subjects, to persist past the deadlines the General Assembly and the Department itself decided to impose upon the administrative appeals process given the high risk of error inherent in the use of the credible-evidence standard. Thus, we agree with the appellate court and hold that a subject’s due process rights are violated by the use of the credible-evidence standard to indicate a report and to resolve a first-stage appeal when combined with delays in the final resolution of the administrative appeal. 335 Ill. App. 3d at 390; 
Doyle
, 305 F.3d 603, 619 (applying Illinois law).

The Department criticizes this holding of the appellate court, citing the flexibility of the reasonableness standard for due process claims. However, we note that applicable provisions themselves contain some flexibility. For example, a scheduled hearing may be continued for good cause, and a continuance is not counted toward the deadline tally if the appellant requests or agrees to it. 89 Ill. Adm. Code §§336.150(a), (c) (2002). Thus, indicated findings will not be expunged due to unforeseen excusable delays. Hearings must be scheduled within a “reasonable time” of the subject’s request (325 ILCS 5/7.16 (West 2002)), the very standard for which the Department argues. In addition, we require strict statutory and regulatory compliance only if the Department uses the credible-evidence standard to indicate a report and to consider a first-stage appeal. The department has argued that strict compliance is too burdensome. If strict compliance is too burdensome, the Department is free to amend its regulations to, for example, require the preponderance of the evidence standard throughout to provide subjects with due process. 20 ILCS 505/4 (West 2002) (allowing the Department to make rules). The Department has a choice: (1) apply the credible-evidence standard to indicate a report and to decide a first-stage appeal and comply with applicable statutory and regulatory provisions; or (2) apply the preponderance-of-the-evidence standard during all stages of inquiry and provide reasonable process, which is not dependent on compliance with all requirements during the administrative appeal. Either option strikes an appropriate balance between the competing interests of subjects and children, by placing the risk of error to a slightly greater degree on subjects, to reflect our characterization of the societal importance of these interests. We conclude that this holding incorporates a sufficient measure of the flexibility inherent in due process analysis.

CONCLUSION

The Department violated Lyon’s due process rights through the combination of the Department’s use of the low credible-evidence standard to indicate the report against Lyon and to deny his first-stage appeal and of delays in the provision of the hearing and of the final administrative decision. Thus, the appellate court properly affirmed the expungement of the indicated reports against Lyon from the State Central Register.

Appellate court judgment affirmed.

JUSTICE KILBRIDE, concurring in part and dissenting in part:

I write separately because I take issue with the portion of the opinion offering the Department the “choice” of applying the credible-evidence standard while strictly adhering to the applicable statutes and regulations or applying a more stringent preponderance-of-the-evidence standard and gaining some flexibility in compliance requirements. See slip op. at 14-15. While I agree that the credible-evidence standard, as currently interpreted by the Department, is problematic and requires close judicial scrutiny, I believe that it is unwise for this court to override the legislature’s decision.

Section 3 of the Act establishes that credible evidence is the appropriate standard for making an indicated finding. 325 ILCS 5/3 (West 1998) (defining an “indicated report” as “a report made under this Act if an investigation determines that
 credible evidence
 of the alleged abuse or neglect exists” (emphasis added)). In turn, “credible evidence” is defined in the Department’s regulations as “available facts when viewed in light of the surrounding circumstances [that] would cause 
a reasonable person
 to believe that a child was abused or neglected.” (Emphasis added.) 89 Ill. Adm. Code §300.20 (2000). In my view, consideration of 
all
 the available evidence, not just that evidence tending to supporting an indicated finding, is necessarily included in any valid application of this “reasonable person” standard. This standard has, however, been interpreted to permit an indicated report to be filed 
without
 consideration of 
any
 exculpatory evidence. Slip op. at 13. Due process concerns arise, in part, when “credible evidence” is interpreted as not requiring consideration of 
both
 exculpatory and inculpatory evidence. Slip op. at 13. To overcome these concerns, this court need only alter the Department’s working definition of “credible evidence.” Specifically, the Department could cure the deficiencies by requiring review of the exculpatory evidence that was reasonably available at the time as part of the credible-evidence standard. This requirement is already implicit in the reasonable-person standard currently specified in the Department’s regulations. 89 Ill. Adm. Code §300.20 (2000). We need not create out of whole cloth an entirely new standard requiring a preponderance of the evidence without strict compliance with the applicable time limitations. Moreover, in its effort to override the legislature’s mandated “credible evidence” standard, the majority has addressed an issue that need not be reached by this court, rendering its opinion purely advisory.

In 
Dupuy v. McDonald
, No. 97–C–4199 (N.D. Ill. July 10, 2003) (
Dupuy II
), 
appeal pending
, the federal district court addressed the issue of the appropriate standard by approving modifications to the Department’s internal procedures. I believe these modifications effectively reduce the risk that an erroneous indicated report will negatively impact an individual’s employment and, thus, run astray of due process. The 
Dupuy II
 court entered a preliminary injunction imposing a more rigorous interpretation of the “credible evidence” standard. Under this interpretation, the Department is required to apply specific investigatory procedures and to consider both inculpatory and exculpatory evidence prior to making an indicated report. 
Dupuy II
, slip op. at 4-5. Those practices comport with due process, reduce the risk of unwarranted negative consequences due to an indicated finding based on one-sided information, and maintain a single “credible evidence” standard in all cases, thus avoiding any potential equal protection problem. Additional safeguards ordered by the court include mandatory telephonic administrative review hearings before making and registering indicated reports in the State Central Registry. These hearings were designed to afford the subject an appropriate, albeit limited, opportunity to be heard prior to a deprivation of protected liberty interests by disclosure of indicated reports to third parties. 
Dupuy II
, slip op. at 5, 7.

In addition, the federal district court concluded that administrative hearings requested after an indicated finding “should be completed within 35 days from the date” an appeal is requested. 
Dupuy II
, slip op. at 9. This is far earlier than the 90 days currently permitted in the Department’s rules (89 Ill. Adm. Code §336.220(a) (2002)). In retaining the 90-day ceiling, however, the court cautioned that “[s]hould history demonstrate a pattern of non-compliance, *** the court will entertain a renewed motion for imposition of some form of self-executing sanction.” 
Dupuy II
, slip op. at 10.

I share the 
Dupuy II
 court’s concern that judicial mandates may be ineffectual in light of delays historically experienced in the Department’s appeal process. I also believe the same concern may apply to this court’s opinion due to its reliance on the 90-day time period imposed by the Department’s own rules (89 Ill. Adm. Code §336.220(a) (2002)). Slip op. at 8. Since this limit was created by the Department and not the legislature, the Department may elect to unilaterally extend the permissible time between a request for a hearing and the release of a final decision (see 89 Ill. Adm. Code §336.220(a) (2002)) rather than revamp its procedures to apply a preponderance-of-the-evidence standard. Any additional delay in the administrative appeal process would again raise the specter of the due process clause. For this reason, I echo the 
Dupuy II
 court’s hope that the Department will zealously attempt to resolve “the overwhelming majority of cases” within the current 90-day time limit. 
Dupuy II
, slip 

op. at 10.