# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

### *In re R.L.*, 2021 IL App (1st) 210419

</div>

| | |
|---|---|
| Appellate Court Caption | *In re* R.L., a Minor-Appellee (The People of the State of Illinois, Petitioner-Appellee, v. W.L., Respondent-Appellant). |
| District & No. | First District, First Division<br>No. 1-21-0419 |
| Filed | October 4, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-JA-639; the Hon. Bernard Sarley, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Sharone R. Mitchell Jr., Public Defender, of Chicago (Frank M. Adams, Assistant Public Defender, of counsel), for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (John E. Nowak, Gina DiVito, and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People.<br><br>Charles P. Golbert, Public Guardian, of Chicago (Kass A. Plain and Christopher J. Williams, of counsel), for other appellee. |

| Panel | JUSTICE WALKER delivered the judgment of the court, with opinion.
Presiding Justice Hyman and Justice Coghlan concurred in the judgment and opinion. |

## OPINION

¶ 1  After a hearing held by video conference, the trial court terminated W.L.'s parental rights with respect to his daughter, R.L. W.L. argues on appeal that by proceeding with a video conference, the trial court violated W.L.'s right to due process. He separately argues that the trial court should have granted his motion for a continuance. We hold that the COVID-19 pandemic justified the use of video conferencing, and the trial court did not abuse its discretion when it denied the motion for a continuance.

¶ 2                                    I. BACKGROUND

¶ 3  R.P. gave birth to R.L. in May 2018. Doctors found that R.P. had exposed R.L. to heroin during gestation. A court granted the Department of Children and Family Services (DCFS) temporary custody of R.L. in July 2018, and DCFS found a foster family for R.L.

¶ 4  In October 2019, the State filed a petition to terminate the parental rights of R.P. and W.L. Early in 2020, the Child Protection Division of the Circuit Court of Cook County began hearing cases by video conference using Zoom. W.L. objected to using Zoom for the proceedings on the petition to terminate his parental rights, arguing that the procedure would violate his right to due process. In October 2020, before trial began, he sought a continuance to delay proceedings until the court could provide a safe means for holding the termination hearing with the witnesses, the judge, the attorneys, and the parties physically present in court. The court denied the motion for a continuance and used Zoom for the termination hearing.

¶ 5  DCFS employees testified about the efforts they made to contact R.P. and W.L., the services eventually offered, and the progress R.P. and W.L. made. Both R.P. and W.L. started seriously engaging in treatment for their addictions in 2020. They had their first visit with R.L. in January 2020. The court found both parents unfit because for a period of 12 months they had shown a lack of interest in R.L. and an intent to forgo parental rights. See 750 ILCS 50/1(D)(c), (n) (West 2020).

¶ 6  The court held the best interest portion of the hearing on Zoom in March 2021. The DCFS child welfare specialist testified that R.L.'s foster parents provided a safe and appropriate home for R.L. R.L.'s foster father testified about R.L.'s medical difficulties, especially with respiratory ailments that plagued R.L. from birth. The court terminated the parental rights of both R.P. and W.L. as to R.L. W.L. now appeals.

¶ 7                                    II. ANALYSIS

¶ 8  On appeal, W.L. contends that the trial court violated his right to due process by "audio-video" conferencing the trial on the petition to terminate parental rights, and the court should have granted his motion for a continuance.

¶ 9     Several courts across the country have addressed similar appeals in which parties have argued that proceedings via video conferencing violated the litigants' due process rights. In every case the parties have cited, the courts have ruled that COVID-19 justified use of video conferencing. See *In re P.S.*, 2021 IL App (5th) 210027; *Vazquez Diaz v. Commonwealth*, 167 N.E.3d 822, 840-41 (Mass. 2021); *In re A.B.*, 956 N.W.2d 162, 170-71 (Iowa 2021); *In re TJH*, 2021 WY 56, ¶ 22, 485 P.3d 408 (Wyo. 2021).

¶ 10    We review *de novo* the issue of whether the court's procedures violated a litigant's right to due process. *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271 (2004). Illinois Supreme Court Rule 241 (eff. May 22, 2020) provides: "The court may, upon request or on its own order, for good cause shown and upon appropriate safeguards, allow a case participant to testify or otherwise participate in a civil trial or evidentiary hearing by video conferencing from a remote location." The court

> "should take into consideration and balance any due process concerns, the ability to questions witnesses, hardships that would prevent the case participant from appearing in person, the type of case, any prejudice to the parties if testimony occurred by video conference, and any other issues of fairness. A court must balance these and other relevant factors in an individual case." Ill. S. Ct. R. 241, Committee Comments (rev. May 22, 2020).

¶ 11    Due process is a flexible concept, and not all situations calling for procedural safeguards call for the same kind of procedure. *People v. Cardona*, 2013 IL 114076, ¶ 15. To evaluate a claim that procedures violated a litigant's right to due process, the court must consider:

> "[T]he private interest that will be affected by the official action; *** the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Internal quotation marks omitted.) *Lyon*, 209 Ill. 2d at 277.

¶ 12    Parents have a fundamental interest in maintaining parental relationships with their children. *In re P.S.*, 2021 IL App (5th) 210027, ¶ 52. By proceeding with video conferencing, the court may increase the risk of an erroneous resolution of a trial. This court has listed reasons to prefer testimony in court to testimony by video connection.

> "[A] witness' personal appearance in court:
>
>    1. assists the trier of fact in evaluating the witness' credibility by allowing his or her demeanor to be observed first-hand;
>
>    2. helps establish the identity of the witness;
>
>    3. impresses upon the witness the seriousness of the occasion;
>
>    4. assures that the witness is not being coached or influenced during testimony;
>
>    5. assures that the witness is not referring to documents improperly; and
>
>    6. in cases where required, provides for the right of confrontation of witnesses."
> (Internal quotation marks omitted.) *In re C.M.*, 319 Ill. App. 3d 344, 355 (2001).

¶ 13    In accord with Rule 241, the trial court here took steps to (1) establish the identities of all persons appearing for the video conference, (2) impress on witnesses the seriousness of the occasion, (3) assure that no one coached or influenced the witnesses during testimony, and (4) assure that the witnesses did not refer to any documents improperly. The court and the

parties observed the witnesses' demeanor through the somewhat restricted lens allowed by the video conference, and the court permitted full cross-examination of all witnesses. Thus, the court took appropriate steps to minimize the risk of error. W.L. has not challenged the credibility of the witnesses, and no serious conflicts requiring credibility assessments arose. We find that the procedures used by the trial court in this case offered little or no risk of an erroneous deprivation of respondent's interest in parenting. See *In re M.R.*, 316 Ill. App. 3d 399, 402 (2000).

¶ 14 The government's "interest in protecting the public health during the COVID-19 pandemic is significant and, combined with its interest in the timely disposition of a case, would, in many instances, outweigh the defendant's interest in an in-person hearing." *Vazquez Diaz*, 167 N.E.3d at 832. A hearing with the parties and witnesses present in court could significantly increase risk of exposure to COVID-19. Several of the witnesses, including the foster parents and DCFS caseworkers, need to encounter R.L., who has had chronic respiratory ailments. Thus, the proceeding in court would increase the risk of exposing R.L., a minor who cannot yet be vaccinated, to COVID-19 because R.L.'s foster parents would have to appear in court and then return home, possibly endangering her. The marginal benefit from an in-person proceeding here, where the parties do not dispute the credibility of the witnesses, does not justify the increased risk to R.L.

¶ 15 A delay to permit the parties and the witnesses to appear in court would prevent R.L. from obtaining a prompt, just, and final resolution of her status. As Illinois courts have previously emphasized, it is not in a child's best interest for the child's status to remain in limbo for extended periods of time. *In re S.L.*, 2014 IL 115424, ¶ 23. Balancing the *Lyon* factors, we hold that the trial court did not violate W.L.'s right to due process by hearing the case via video conferencing. See *In re P.S.*, 2021 IL App (5th) 210027; *Vazquez Diaz*, 167 N.E.3d at 840-41; *In re A.B.*, 956 N.W.2d at 170-71; *In re TJH*, 2021 WY 56, ¶ 22, 485 P.3d at 415-16.

¶ 16 W.L. argues that the trial court should have granted his motion for a continuance to wait and see whether a vaccine would permit the court to hear the case with the parties and the witnesses present in court. It is within the sound discretion of the trial court to grant or deny a continuance motion, and the court's decision will not be disturbed absent an abuse of discretion or palpable injustice. The denial of a continuance request is not a ground for reversal unless the complaining party has been prejudiced. *In re Jamarqon C.*, 338 Ill. App. 3d 639, 644 (2003).

¶ 17 In October 2020, when W.L. requested the continuance, the court could only speculate as to when it might proceed safely in a courtroom. Broad distribution of vaccines remained in the indefinite future. Here, the trial court chose not to speculate about the success of the vaccines or the prospects for safe resumption of courtroom proceedings. W.L. has not shown that he suffered any prejudice from the expeditious resolution of the case. Considering R.L.'s interest in a prompt resolution of her family situation, we cannot say that the trial court abused its discretion when it denied the motion for a continuance.

¶ 18 III. CONCLUSION

¶ 19 The COVID-19 pandemic and R.L.'s health issues justified the use of Zoom video conferencing for the trial. The trial court did not abuse its discretion when it denied the motion for a continuance. Accordingly, we affirm the trial court's judgment.

- 4 -

¶ 20     Affirmed.